UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 SEP 26  PM 3: 08

CLERK

BY _____
DEPUTY CLERK

S.R.J.F., INC.,                          )
                                         )
    Plaintiff,                           )
                                         )
    v.                                   )       Case No. 2:22-cv-00147
                                         )
DAIRY FARMERS OF AMERICA, INC.,          )
                                         )
    Defendant.                           )

## OPINION AND ORDER DENYING SRJF'S MOTION TO STRIKE, GRANTING DFA'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING SRJF'S CROSS-MOTION FOR SUMMARY JUDGMENT, DENYING SRJF'S RULE 56(d) REQUEST FOR DISCOVERY, AND GRANTING LEAVE TO FILE AN AMENDED COMPLAINT
### (Docs. 45, 57, 58, & 60-4)

Plaintiff S.R.J.F., Inc. ("SRJF") brings this action against Defendant Dairy Farmers of America, Inc., ("DFA") alleging violation of § 2 of the Sherman Act, monopsony (Count One) and attempt to monopsonize (Count Two). Pending before the court are cross motions for summary judgment (Docs. 45 & 58), SRJF's motion to strike Brad Keating's affidavit and accompanying exhibits supporting DFA's motion for summary judgment (Doc. 57), and SRJF's Fed. R. Civ. P. 56(d) request for discovery pertaining to the statute of limitations (Doc. 60-4).

SRJF is represented by Steve W. Berman, Esq.; Thomas K. Boardman, Esq.; Elaine T. Byszewski, Esq.; Brian D. Clark, Esq.; Christopher J. McVeigh, Esq.; David R. Scott, Esq.; Michael P. Srodoski, Esq.; Patrick J. McGahan, Esq.; Shana E. Scarlett, Esq.; Stephen J. Teti, Esq.; W. Joseph Bruckner, Esq.; and William B. Skiff, II, Esq.

DFA is represented by Alfred C. Pfeiffer, Jr., Esq.; Devin T. McKnight, Esq.; Hannah C. Waite, Esq.; Ian P. Carleton, Esq.; Sarah M. Ray, Esq.; and W. Todd Miller, Esq.

## I.    Procedural Background.

On July 29, 2022, SRJF filed a two-count Class Action Complaint ("the Complaint") on behalf of itself and a plaintiff class (the "Proposed Class") consisting of "all dairy farmers, whether individuals or entities, who produced and sold raw Grade A milk within Dairy Farmers of America, Inc.'s . . . Northeast Area region any time from at least May 10, 2016, until the present[.]" (Doc. 1 at 4.)

DFA answered the Complaint on October 5, 2022 and counterclaimed for breach of contract. (Doc. 42.) On October 12, 2022, DFA moved for summary judgment (Doc. 45), asserting that SRJF's claims against it have been released pursuant to the settlement agreement in *Allen v. Dairy Farmers of America* (the "*Allen* Settlement Agreement") and arguing SRJF filed this action in violation of a covenant not to sue. In the alternative, it moved for partial summary judgment because SRJF's claims prior to July 29, 2018 are barred by the Sherman Act's four-year statute of limitations. DFA's motion is supported by the affidavit of its Senior Vice President and Chief Operating Officer, Brad Keating (the "Keating Affidavit") (Doc. 45-3).

On October 26, 2022, DFA moved to stay discovery until resolution of its motion for summary judgment. (Doc. 52.) SRJF opposed DFA's motion to stay on November 9, 2022. (Doc. 55.) The court granted a stay of discovery on November 14, 2022, reasoning that if SRJF's claims are based on released conduct, the court should not allow discovery regarding that conduct. (Doc. 59.)

On November 10, 2022, SRJF answered DFA's counterclaim (Doc. 56), opposed DFA's motion for summary judgment (Doc. 60), and cross-moved for summary judgment on DFA's affirmative defense of release and on DFA's counterclaim of breach of contract. (Doc. 58.) Although docketed separately, SRJF's opposition to DFA's motion for summary judgment and its cross-motion for summary judgment are identical. SRJF requests that "the [c]ourt consider its cross-motion as to DFA's counterclaim and affirmative defense as fulfilling its obligations under Local Rule 7.1(c)(2) to file an opposition to DFA's motion for summary judgment on Plaintiff['s] claims." (Doc. 58 at 8

n.2.)[1] SRJF included a Rule 56(d) affidavit of its counsel, Stephen J. Teti, Esq. (Doc. 58-4), requesting discovery in order to address DFA's motion for summary judgment regarding its statute of limitations defense (the "Rule 56(d) Affidavit").

DFA filed a reply in support of its motion for summary judgment on December 16, 2022. (Doc. 65.) It opposed SRJF's cross-motion for summary judgment that same day. (Doc. 66.) SRJF filed a reply pertaining to its cross-motion for summary judgment on January 6, 2023. (Doc. 71.) DFA opposed SRJF's Rule 56(d) Affidavit on December 16, 2022. (Doc. 67.) On January 6, 2023, SRJF replied. (Doc. 73.) On November 10, 2022, SRJF filed a motion to strike portions of the Keating Affidavit. (Doc. 57.) DFA opposed SRJF's motion to strike on December 16, 2022 (Doc. 64), and SRJF replied on January 6, 2023. (Doc. 72.)

On May 1, 2023, the court held oral argument on the pending motions and took them under advisement.

## II.    Whether the Court Should Strike Portions of the Keating Affidavit.

SRJF seeks to strike portions of the Keating Affidavit wherein Mr. Keating avers that he has personal knowledge of, among other things, the *Allen* Settlement Agreement's creation of an Advisory Council Member and Farmer Ombudsperson. *See* Doc. 45-3. Mr. Keating further avers that John Poole, in his capacity as Advisory Council Member, issued eight semi-annual reports between his appointment in January 2017 and the end of his term in January 2021. Prior to 2019, these reports were distributed to DFA dairy farmers who produced and pooled milk within Federal Milk Marketing Order 1 ("FMMO 1"), as well as to dairy farmers who marketed milk through Dairy Marketing Service ("DMS").

When DMS was dissolved on January 1, 2019, Mr. Poole's reports were sent to all dairy farmers who produced and pooled milk within FMMO 1. The Keating Affidavit includes Mr. Poole's eight semi-annual reports as attachments. *See* Docs. 45-5 through 45-12.

---

[1] Because these documents are identical, the court cites Doc. 58 and not Doc. 60.

Mr. Keating states that Jennifer Nelson, in her capacity as Farmer Ombudsperson, issued ten reports regarding DFA's activities, dairy industry events and trends, and other news relevant to dairy farmers in the Northeast between her appointment in March 2017 and the end of her term on March 14, 2022. Prior to 2019, these reports were distributed to DFA dairy farmers who marketed their milk with DMS. After DMS was dissolved as of January 1, 2019, Ms. Nelson's reports were distributed to DFA dairy farmers who produced and pooled milk in FMMO 1. Mr. Keating attaches Ms. Nelson's ten reports to his affidavit. *See* Docs. 45-13 through 45-22. Finally, Mr. Keating provides a copy of an October 17, 2013 "Milk Producer's Agreement" between DMS and SRJF.

SRJF argues there are "inadmissible portions" of the Keating Affidavit because Mr. Keating lacks personal knowledge of the facts he attests to and because the exhibits to his affidavit are not business records under Fed. R. Evid. 803(6). (Doc. 57 at 1) (capitalization and emphasis omitted). In response, DFA submitted a supplemental affidavit from Mr. Keating setting forth additional facts demonstrating his personal involvement in the review and distribution of Mr. Poole's and Ms. Nelson's reports (the "Supplemental Keating Affidavit"). (Doc. 64-1.) Mr. Keating avers that he was "the designated point of contact from DFA's management team for both the Advisory Council Member and the Farmer Ombudsperson[,]" and that he "met regularly with Mr. Poole and Ms. Nelson[.]" *Id.* at 2, ¶¶ 6-7. He further avers that he received and reviewed their reports and oversaw their distribution.

"The test for admissibility of a summary judgment affidavit 'is whether a reasonable trier of fact could believe the witness had personal knowledge.'" *Super Express USA Publ'g Corp. v. Spring Publ'g Corp.*, 2017 WL 1274058, at *6 (E.D.N.Y. Mar. 24, 2017) (quoting *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 163 (E.D.N.Y. 2012)). "The lack of certain specific details or arguably vague statements will not render the affidavit inadmissible, but affect the weight and credibility of the testimony, which have to be determined by the trier of fact at trial." *Id.* (quoting *Serrano*, 863 F. Supp. 2d at 163)).

SRJF asserts that the Keating Affidavit:

> does not show that [Mr.] Keating was involved in distributing the reports,
> that he received the reports, or even that he is knowledgeable regarding
> DFA's record-keeping protocols. Indeed, [Mr.] Keating does not attest to
> any facts regarding any interaction he ever had with [Mr.] Poole or [Ms.]
> Nelson, or any other means by which he came to have personal knowledge
> of their actions at the time they occurred.

(Doc. 57 at 3-4.) The Keating Affidavit, as supplemented, contains a sufficient factual basis so that a rational trier of fact could find he has personal knowledge of the facts set forth therein.

SRJF's argument that the exhibits to the Keating Affidavit must satisfy the business records exception to the hearsay rule, Fed. R. Evid. 803(6), is similarly misplaced. DFA "does not rely on the reports for the truth of any matter asserted therein[,]" but cites the reports to demonstrate "farmer representatives were providing regular updates to DFA's farmer-members, which . . . disproves any assertion that DFA was engaging in any fraudulent concealment to toll the elapsed statute of limitations." (Doc. 64 at 2.) *See Jordonne v. Ole Bar & Grill, Inc.*, 2016 WL 3409088, at *6 (S.D.N.Y. Apr. 26, 2016) (considering newspaper articles as non-hearsay when they were not offered for the truth of the matter asserted but rather established the information contained therein was in the public realm).

For the foregoing reasons, SRJF's motion to strike the Keating Affidavit is DENIED.

## III.  Cross-Motions for Summary Judgment.

### A.  Request for Judicial Notice.

DFA requests that the court take judicial notice of attachments to Attorney Sarah M. Ray's Declaration (Doc. 45-24) in support of its motion for summary judgment. (Doc. 45-2.) SRJF does not oppose this request. The court GRANTS DFA's request and pursuant to Fed. R. Evid. 201 takes judicial notice of the following:

1.  Filings in prior lawsuits to establish the fact that litigation against DFA and the claims advanced in *Sitts* were publicly filed and litigated beginning in 2016.

    a.  Complaint filed on October 26, 2016, in *Sitts v. Dairy Farmers of America, Inc.* in the District Court of Vermont. *Sitts v. Dairy*

*Farmers of America, Inc.*, No. 2:16-cv-287 (D. Vt.), Doc. No. 1 (the "*Sitts* Complaint"). (Doc. 45-33.)

b.    Amended Complaint filed on May 23, 2017, in *Sitts v. Dairy Farmers of America, Inc.* in the District Court of Vermont. *Sitts v. Dairy Farmers of America, Inc.*, No. 2:16-cv-287 (D. Vt.), Doc. 29 (the "*Sitts* Amended Complaint"). (Doc. 45-34.)

2.    News coverage of DFA's activities.

a.    An article published in *Food & Power* on February 23, 2017. Leah Douglas, Milk Monopolist Moves to Increase Power Over Dairy Farmers, FOOD & POWER (Feb. 23, 2017). (Doc. 45-35.)

b.    An article published in *The Post-Journal* on February 26, 2017. Nate Wilson, There Could Be a Lot of Spilled Milk, THE POST-JOURNAL (Feb. 26, 2017). (Doc. 45-36.)

c.    An article published in *Lancaster Farming* on February 13, 2017. Charlene M. Shupp Espenshade, Milk Glut Prompts DFA to Seek Change in Pooling, LANCASTER FARMING (Feb. 13, 2017). (Doc. 45-37.)

d.    An article published in *Lancaster Farming* on March 31, 2017. Charlene M. Shupp Espenshade, DFA Tells Independents to Join or Find Own Marketer, LANCASTER FARMING (Mar. 31, 2017). (Doc. 45-40.)

e.    An article published in *NNY360* on April 6, 2017. Marcus Wolf, DFA will break ties with 900 farmers, NNY360 (Apr. 6, 2017). (Doc. 45-41.)

f.    An article published in *Farm & Dairy* on May 16, 2017. Susan Crowell, DFA to stop marketing independent farms' milk, FARM & DAIRY (May 16, 2017). (Doc. 45-42.)

g.    An article published in *Dairy Foods* on November 2, 2017. Dairy Farmers of America acquires Cumberland Dairy, DAIRY FOODS (Nov. 2, 2017). (Doc. 45-43.)

h.    An article published in *Agri-Pulse* on November 8, 2017. Daniel Enoch, Dairy Farmers of America buys Cumberland Dairy, AGRI-PULSE (Nov. 8, 2017). (Doc. 45-44.)

i.    An article published in *Prepared Foods* on November 10, 2017. Dairy Farmers Of America Acquires Cumberland Dairy, PREPARED FOODS (Nov. 10, 2017). (Doc. 45-45.)

3.    Materials from Government Websites.

a.    Testimony of Elvin Hollon before the Pennsylvania Milk Marketing
      Board, submitted on February 10, 2017, and available at the
      Pennsylvania Milk Marketing Board's website. (Doc. 45-39.)

b.    A collection of materials from the Northeast Marketing Area,
      FMMO 1 website, related to DFA's request to FMMO 1 in January
      2017 regarding pooling rules and its withdrawal of the request in
      February 2017. (Doc. 45-38.)

## B.    Undisputed Facts.

### 1.    The *Allen* Class Action Litigation.

On October 8, 2009, plaintiffs and class representatives Alice H. Allen and
Laurance E. Allen, d/b/a Allens Farm, Garret Sitts, and Ralph Sitts filed a Class Action
Complaint in this court against DFA and others in *Allen v. Dairy Farmers of America*. On
November 12, 2010, plaintiffs and class representatives filed a Revised Consolidated
Amended Class Action Complaint and Jury Demand (the "*Allen* Complaint").

On November 19, 2012, the court certified a class consisting of two subclasses:
(1) "All dairy farmers, whether individuals or entities, who produced and pooled raw
Grade A milk in Order 1 during any time from January 1, 2002 to the present, who are
members of DFA or otherwise sell milk through DMS[,]" (the "DFA/DMS subclass")
and (2) "All dairy farmers, whether individuals or entities, who produced and pooled raw
Grade A milk in Order 1 during any time from January 1, 2002 to the present, who are
not members of DFA and do not otherwise sell milk through DMS[,]" (the "non-
DFA/DMS subclass") (Doc. 45-1 at 2, ¶ 3) (internal quotations marks omitted). SRJF
was a member of the DFA/DMS subclass.

On May 13, 2016, the court held a fairness hearing and, on June 7, 2016, granted
final approval of the *Allen* Settlement Agreement. SRJF did not opt out of the *Allen*
Settlement Agreement and is bound by its terms. In approving the *Allen* Settlement
Agreement, the court observed that:

> Pursuant to the December 2015 Proposed Settlement, without an admission
> of wrongdoing, [d]efendants have agreed to pay $50 million dollars to the
> Dairy Farmers Class in exchange for a release of the claims asserted in this
> action as well as claims "arising out of the conduct alleged in the
> Complaint" as to specified released parties.

7

(Doc. 45 at 10) (emphasis omitted).

On April 18, 2017, the Second Circuit issued a Summary Order approving the *Allen* settlement. *See Haar v. Allen*, 687 F. App'x 93 (2d Cir. 2017). On January 16, 2018, the Supreme Court denied certiorari. *See Haar v. Allen*, 138 S. Ct. 745 (2018). The effective date of the *Allen* Settlement Agreement is January 16, 2018.

## 2. The *Allen* Settlement Agreement.

The parties agree that the *Allen* Settlement Agreement is unambiguous. It contains the following terms:

> Section 1.16: "Released Claims" means all claims from January 1, 1998 through the date that this Amended Settlement is submitted to the Court for Final Approval, that were asserted or that could have been asserted arising out of the conduct alleged in the Complaint as to the Released Parties, as defined in Paragraph 1.17 below, regardless of whether those claims arise from common law theories of tort or contract, including without limitation breach of contract and breach of fiduciary duty, or theories under federal, state, or other statute, law, rule, or regulation.

(Doc. 45-30 at 6, ¶ 1.16.)

> Section 1.17: "Released Parties" means the Settling Defendants, their predecessors, successors, subsidiaries, insurers, members, owners, attorneys, and any and all past and present officers, directors, employees, managing agents, and controlling persons of such entities, but not any other Defendant.

*Id.* at 7, ¶ 1.17.

> Section 1.18: "Releasing Parties" means, individually and collectively, the Plaintiff Subclasses and all Subclass Members on behalf of themselves and any Person claiming by or through them as an heir, administrator, devisee, predecessor, successor, parent, subsidiary, representative of any kind, all entities in which they have an ownership interest, shareholder, partner, director, member, owner of any kind, affiliate, assignee, agent, employee, contractor, attorney, or insurer. Releasing Parties shall not include any Person who is excluded from the Subclasses pursuant to Paragraph 9.1.

*Id.* at 7, ¶ 1.18.

> Section 6.1: Upon the Effective Date, and in consideration of the Settlement Consideration specified in Section 7 herein and for other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, each of the Releasing Parties shall be deemed to have, and

8

by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, shall have covenanted not to sue any of the Released Parties with respect to all Released Claims, and shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any Released Claims against any of the Released Parties.

*Id.* at 14-15, ¶ 6.1.

Section 6.2: Upon the Effective Date, the Plaintiff Subclasses shall have expressly waived, and each of the Releasing Parties shall be deemed to have waived, and by operation of the Judgment shall have waived, any and all provisions, rights, and operation of the Judgment shall have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or any principle of common law or foreign law, that is similar, comparable, or equivalent in effect to California Civil Code § 1542 and § 20-7-11 of the South Dakota Codified Laws or that would otherwise act to limit the effectiveness or scope of the releases. Plaintiff Subclasses and the Releasing Parties expressly acknowledge that they may hereafter discover facts in addition to or different from those that any of them or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims, but upon the Effective Date each Plaintiff shall expressly have, and, upon the Effective Date, each Releasing Party shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, as set forth in Paragraph 1.16 above, that could have been asserted with respect to the subject matter of the Released Claims. Plaintiff Subclasses acknowledge, and the Releasing Parties shall be deemed to have acknowledged, and by operation of the Judgment shall have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

*Id.* at 15, ¶ 6.2.

The *Allen* Settlement Agreement provided for the appointment of an Advisory Council Member to DFA's Northeast Area Council ("NEAC") and the appointment of a Farmer Ombudsperson, and granted the Advisory Council Member "[r]ights and [d]uties" to: access books and records and conduct financial reviews; attend NEAC meetings, including the right to "receive all information provided to other NEAC members" and to "request additional information as appropriate"; attend DFA Member meetings and the DFA Annual Meeting, including the right to "solicit input from individual members at these meetings"; have "an individual from the management team responsible for DFA's

and DMS's activities in Order 1 to serve as the designated point of contact[,]" including the right to "meet with the [designated point of contact] at least quarterly"; and "confer with outside experts and consultants to assist in . . . the review of the financial or other records[.]" *Id.* at 23-25, ¶ 7.2(d)(vi).

John Poole was appointed Advisory Council Member, effective January 3, 2017, to serve a four-year term. Jennifer Nelson was appointed Farmer Ombudsperson, effective March 15, 2017, to serve a five-year term.

### 3. The *Sitts* Litigation.

On October 26, 2016, a group of Northeast dairy farmers who opted out of the *Allen* Settlement Agreement brought suit against DFA in *Sitts v. Dairy Farmers of America, Inc.* The *Sitts* litigation was settled in September 2020. Between October 2016 and September 2020, the *Sitts* case was a matter of public record.

### 4. SRJF's Proposed Class and Reliance on *Allen* Facts.

SRJF defines its proposed class as "all dairy farmers, whether individuals or entities, who produced and sold raw Grade A milk within Dairy Farmers of America, Inc.'s . . . Northeast Area region any time *from at least May 10, 2016*, until the present[.]" (Doc. 1 at 4) (emphasis supplied). SRJF thus seeks to bring claims that accrued on the day after the *Allen* Settlement Agreement release period expired or potentially before that date. In doing so, SRJF relies on events and conduct covered by the *Allen* Settlement Agreement's release.

For example, in its Complaint, SRJF alleges that (1) DFA's acquisition of milk processing facilities constituted "empire building" *Id.* at ¶¶ 4, 8-9, 67-70, 72-76, 103, 128, 131-33, 169-211, 221, 254-56, 267; (2) DFA coerced dairy farmers to use DFA's marketing services, *id.* at ¶¶ 134-58, 207-11, 255; (3) DFA's organizational structure created a conflict of interest, *id.* at ¶¶ 91-105; and (4) DFA employed a "low cost/high supply" pricing model to monopsonize the market for raw Grade A milk in Order One, *id.* at ¶¶ 91-105, 145, 257, 268.[2]

---

[2] DFA provides other examples of pre-May 10, 2016 conduct included in SRJF's Complaint. *See, e.g.*, Doc. 1 at 10, ¶ 20 (explaining that subsequent to the formation of DFA in 1998, DFA,

## C.     Facts SRJF Disputes Without Citation to Record Evidence That Do Not Preclude Summary Judgment.

DFA cites four news sources and two Farmer Ombudsman reports which it states describe that "around early 2017, DFA informed non-member farmers that it would no longer market their milk as of October 31, 2017." (Doc. 45-1 at 7, ¶ 29.) Although SRJF disputes this statement, it cites no record evidence to the contrary.

DFA asserts that three news sources published articles about DFA's purchase of Cumberland Dairy in November 2017. SRJF asserts that there is a genuine dispute as to whether it was on notice of its claims prior to July 29, 2018, but it cites no evidence that it was not.

DFA asserts that at least one news source, one Farmer Ombudsman report, and one Advisory Council Member report described the expansion of milk production in 2017. SRJF cites no evidence that contradicts this statement.

Having failed to cite record evidence as required by Fed. R. Civ. P. 56, SRJF does not identify a genuine issue of material fact that precludes summary judgment.

## IV.    Conclusions of Law and Analysis: Motions for Summary Judgment.

### A.     Standard of Review.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that "'might affect the outcome of the suit under the governing law[,]'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), while "[a] dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict

---

"[o]ver the ensuing years, . . . acquired many other cooperatives[.]"); Doc. 1 at 38-41, ¶¶ 106-16 (addressing DFA's alleged pre-class period collusion with Dean Foods); *id.* at 42-44, ¶¶ 121-26 (describing DFA's alleged pre-class period conduct in the Northeast dairy market, *Allen*, and *Sitts*); *id.* at 46, ¶ 134 ("DFA had coerced large portions of those independent dairy farmers and cooperatives to use DMS in the first instance through agreeing to 'outsourcing agreements' with various Northeast processors . . . in the pre-Class Period."); *id.* at 74, ¶ 246 (noting the start of DFA's actual or attempted monopsonization of the Northeast market for raw Grade A milk predates the class period); *see also* Doc. 45 at 17 (setting forth a chart of the nearly identical allegations in the *Allen* Complaint and SRJF's Complaint).

11

for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). On a motion for summary judgment, the court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"Where parties file cross-motions for summary judgment, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks, alterations, and citation omitted).

In adjudicating a motion for summary judgment, the district court's role "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). If the evidence "presents a sufficient disagreement to require submission to a jury[,]" the court should deny summary judgment. *Anderson*, 477 U.S. at 251-52. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted). Not all disputed issues of fact, however, preclude summary judgment. "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted."
*Anderson*, 477 U.S. at 249-50 (citations omitted).

### B. Whether the *Allen* Settlement Agreement Bars SRJF's Pre-May 9, 2016 Claims and Allegations.

DFA argues the *Allen* Settlement Agreement released claims for which SRJF now
seeks to recover in violation of a covenant not to sue. SRJF opposes DFA's motion and
cross-moves for partial summary judgment on DFA's affirmative defense of release and
DFA's counterclaim for breach of the *Allen* Settlement Agreement.

The parties agree that New York law governs the interpretation of the *Allen*
Settlement Agreement. *See* Doc. 45-30 at 47, ¶ 13.12 ("New York law shall apply to any
dispute arising from or relating to this Agreement."). Under New York law, "[w]here a
release is unambiguous, it must be enforced according to its terms without resort to
extrinsic evidence." *Consolidated Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 647
(S.D.N.Y. 2004).

Pursuant to the *Allen* Settlement Agreement, SRJF "fully, finally, and forever
released, relinquished, and discharged all Released Claims against" DFA, "covenanted
not to sue" DFA "with respect to all Released Claims," and is thus "permanently barred
and enjoined from instituting, commencing, prosecuting or asserting any Released Claims
against" DFA. (Doc. 45-30 at 14-15, ¶ 6.1.) The *Allen* Settlement Agreement defines
"Released Claims" as "all claims from January 1, 1998 through" May 9, 2016 "that were
asserted or that could have been asserted arising out of the conduct alleged in the
Complaint as to the Released Parties[.]" *Id.* at 6, ¶ 1.16. This language is broad in scope
and covers not only the *Allen* Complaint but also claims that could have been asserted
therein.

The *Allen* Settlement Agreement acknowledges that the class members "may
hereafter discover facts in addition to or different from those" known at the time of the
Agreement but agreed to a broad release nonetheless. *Id.* at 15, ¶ 6.2. As DFA further
points out, "the *Allen* class members did not bargain for—nor did the *Allen* settlement

13

call for—changes to DFA's fundamental business operations, including its role as both a milk marketer and a milk processor[.]" (Doc. 45 at 6.)

"A release is a provision that intends a present abandonment of a known right or claim." *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 339 (S.D.N.Y. 2006) (quoting *McMahan & Co. v. Bass*, 673 N.Y.S.2d 19, 21 (N.Y. App. Div. 1998)) (alteration and internal quotation marks omitted). It may release future conduct provided it is a continuation of the released conduct. *See VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 126 (2d Cir. 2001) ("It is not uncommon . . . for a release to prevent the releasor from bringing suit against the releasee for engaging in a conspiracy that is later alleged to have continued after the release's execution."); *Madison Square Garden, L.P. v. Nat'l Hockey League*, 2008 WL 4547518, at *6 (S.D.N.Y. Oct. 10, 2008) (holding release barred antitrust case based on "*continued* . . . enforcement of pre-existing policies") (emphasis in original).

DFA has established that there is no genuine issue of material fact as to whether SRJF's Complaint relies on released conduct; it does. SRJF's Complaint thus violates the *Allen* Settlement Agreement's release.

## C.     Whether SRJF Has Violated the Covenant Not to Sue.

"[S]ettlement agreements are contracts and must therefore be construed according to general principles of contract law." *United States v. Prevezon Holdings, Ltd.*, 289 F. Supp. 3d 446, 450 (S.D.N.Y. 2018) (internal quotation marks omitted) (quoting *Jimmo v. Burwell*, 2016 WL 4401371, at *6 (D. Vt. Aug. 17, 2016)). A covenant not to sue in contract "applies to future claims and constitutes an agreement to exercise forbearance from asserting any claim which either exists or which may accrue." *Benicorp*, 447 F. Supp. 2d at 339. Covenants not to sue "must be strictly construed against the party asserting [them]. Moreover, [their] wording must be clear and unequivocal." *Schneider v. Revici*, 817 F.2d 987, 993 (2d Cir. 1987) (internal quotation marks omitted).

In exchange for valuable consideration, SRJF "covenanted not to sue [DFA] with respect to all Released Claims," and to be "permanently barred and enjoined from instituting, commencing, prosecuting or asserting any Released Claims" against DFA,

14

which include "all claims from January 1, 1998 through [May 9, 2016] that were asserted or that could have been asserted arising out of the conduct alleged in the [*Allen*] Complaint[.]" (Doc. 45-30 at 14-15, ¶ 6.1; *id.* at 6, ¶ 1.16.) This language is clear and unequivocal.

Although the parties agree that SRJF's suit "rises and falls on its ability to prove that DFA's new, distinct, and specific[] post-May 9, 2016 acts violated the Sherman Act and suppressed raw milk prices[,]" (Doc. 71 at 11), SRJF's Complaint contains numerous allegations pertaining to DFA's acts and omissions which took place prior to May 10, 2016 and which were at the core of the *Allen* litigation. For example, SRJF defines the putative class as dairy farmers who pooled their milk in the Northeast "*at least* [as of] May 10, 2016[.]" (Doc. 1 at 4) (emphasis supplied). In its Complaint, it concedes that its allegations predate the Class Period. *See id.* at 74, ¶ 246 ("The start of DFA's actual or attempted monopsonization of the Northeast market for raw Grade A milk predates the Class Period."). Even portions of the Complaint that do not purport to provide "historical context" require the court to consider conduct released by the *Allen* Settlement Agreement. *See, e.g.*, *id.* at 65, ¶ 218 (alleging that "Northeast dairy farmers['] dairy milk checks were substantially lower than the USDA's estimate of the value of the raw milk they provided[, a]nd that gap increased as the Class Period progressed, notwithstanding that Northeast raw milk prices were already artificially suppressed in the pre-Class Period as a result of DFA's prior anticompetitive misconduct.").

Under New York law, a breach of contract claim requires the party asserting the claim to establish: "(1) the existence of an agreement, (2) adequate performance of the contract by the [claimant], (3) breach of contract by the [other party], and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). DFA has established each element of its breach of contract claim. The *Allen* Settlement Agreement is an unambiguous agreement, DFA has performed it, and SRJF breached it by bringing suit on released conduct. DFA has been damaged by being forced to defend against a Complaint that includes conduct and claims subject to a covenant not to sue.

15

The "factual predicate" doctrine, to the extent it applies,[3] does not require a different outcome. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) (holding that even claims that did not exist can be released provided they arise out of "the identical factual predicate as the settled conduct") (internal quotation marks omitted). SRJF does not allege a different factual predicate from *Allen* in its Complaint. To the contrary, it paraphrases portions of the *Allen* Complaint as key components of its monopsonization claims.[4]

For the reasons stated above, the court GRANTS DFA's motion for partial summary judgment and DENIES SRJF's cross-motion for summary judgment. Pursuant to Fed. R. Civ. P. 15, the court *sua sponte* hereby GRANTS SRJF leave to file an Amended Complaint, which shall not include conduct and claims released by the *Allen* Settlement Agreement.

### D.      Whether SRJF's Claims Prior to July 29, 2018 are Barred by the Statute of Limitations.

"In the alternative," DFA moves for partial summary judgment, seeking a ruling that SRJF's claims are time-barred prior to July 29, 2018. (Doc. 45 at 5.) As the court has granted summary judgment on the basis of the release and the covenant not to sue set forth in the *Allen* Settlement Agreement, it addresses DFA's alternative statute of limitations argument only to the extent it pertains to SRJF's request under Rule 56(d) for discovery on its fraudulent concealment claim.

SRJF argues that the statute of limitations should not be decided at the pleading stage and asserts that the Sherman Act's four-year statute of limitations was tolled by DFA's fraudulent concealment and continuing violations. It contends it should be

---

[3] The court need not decide whether the factual predicate doctrine bars post-May 10, 2016 conduct at this time because it will grant leave to amend so that SRJF may re-plead its claims without relying on conduct released in the *Allen* Settlement Agreement. In an Amended Complaint, the applicability of the factual predicate doctrine will become more apparent. *See TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) (noting that the "identical factual predicate" doctrine evolved to prevent class members from "subsequently asserting claims . . . depending upon the very same set of [released] facts") (internal quotation marks omitted).

[4] *See* Doc. 45 at 17 (comparing SRJF's claims to those in *Allen*).

permitted to take extensive discovery and in its Rule 56(d) affidavit states that discovery will "assist [SRJF] to establish triable issues of fact as to the application of the statute of limitations to its claims[.]" (Doc. 58-4 at 3.)[5]

SRJF's Complaint alleges fraudulent concealment and continuing violations as follows:

### IX. FRAUDULENT CONCEALMENT

239. As discussed above, DFA was previously alleged to have violated the federal antitrust laws, including, *inter alia,* for monopoly and monopsony in the Northeast. *See Allen v. Dairy Farmers of Am., Inc., et al.,* No. 09-cv-00230-cr (D. Vt.); *Sitts v. Dairy Farmers of Am., Inc., et al.,* No. 16-cv-00287-cr (D. Vt.). DFA settled the *Allen* matter, releasing claims through May 9, 2016, the day before the Class Period commences in this lawsuit. DFA settled the *Sitts* matter in September 2020, on undisclosed terms. In the *Allen* settlement, DFA continued to deny any wrongdoing.

---

[5] SRJF's requests include, among other things, communications between DFA and SRJF or other DFA members concerning the events described in SRJF's Complaint, the circulation and readership volume of the news reports and government webpages DFA cites as evidence of SRJF's inquiry notice, documents concerning an attempt to conceal facts relating to the events described in SRJF's Complaint, DFA's antitrust and compliance policies, documents and communications concerning its milk marketing and milk processing operations, meeting minutes and Board packages, documents and communications concerning DFA's November 2017 purchase of Cumberland Dairy Milk Producers, documents and communications concerning DFA's 2017 efforts to coerce farmers to join DFA by refusing to continue marketing milk for five non-DFA farmers, and documents and communications concerning DFA's efforts in 2017 to change the pooling rules in FMMO 1. SRJF also seeks to depose Mr. Keating to inquire about the extent of personal knowledge, the facts contained in the Keating Affidavit, his communications with Mr. Poole and Ms. Nelson, and the above-referenced discovery topics. SRJF also seeks to depose Mr. Poole and Ms. Nelson regarding information provided to them by DFA, information withheld from them by DFA, their communications with and about DFA members, DFA's implementation of the *Allen* Settlement Agreement, and their knowledge of the overt anticompetitive acts alleged in SRJF's Complaint and the manner and timing of their acquisition of that knowledge. SRJF seeks to depose DFA officers and employees who are responsible for communications with Northeast DFA members and the anticompetitive acts alleged in SRJF's Complaint. According to SRJF, these depositions will "generate evidence as to DFA's anticompetitive conduct, DFA's efforts to conceal that anticompetitive conduct, DFA's failure to fulfill its duty of candor to its members, and . . . [SRJF's] due diligence." (Doc. 58-4 at 7, ¶ 8.) SRJF asserts that it has prepared but not yet served requests for production of documents ("RFPs") which "will yield facts relevant to DFA's motion for summary judgment as to the statute of limitations." *Id.* at 8, ¶ 13.

240. Moreover, in the *Allen* settlement, DFA purportedly agreed to implement structural reforms that took the form of court-approved injunctive relief. *See Allen*, No. 09-cv-00230-cr, ECF No. 712-2. These include, *inter alia:* (a) a restriction precluding DFA from entering into any new full-supply agreements in FMMO No. 1; (b) requiring that when DFA terminated or chose not to renew a Class member's milk marketing agreement, that certain conditions would apply, including the provision of written notice and a six-month grace period; (c) the establishment of two farmer representative positions, the "Advisory Council Member" on DFA's Northeast Area Council and the "Farmer Ombudsperson"; (d) a requirement that DFA provide greater financial transparency; (e) the establishment of an Audit Committee for the DFA Board of Directors; and (f) a provision precluding DFA from retaliating against any class member for their participation in litigation or if they decide to cease marketing their milk with DFA. *See generally id.*

241. Plaintiff and members of the Class reasonably relied on the *Allen* settlement, including the structural reforms contained therein, as evidence that DFA would discontinue their anticompetitive, exclusionary, and predatory conduct in the Northeast raw Grade A milk market.

242. It was not until this [c]ourt ruled on DFA's motion for summary judgment in the *Sitts* action, and the [c]ourt disclosed certain . . . evidence gathered by the *Sitts* plaintiffs, that Plaintiff and members of the Class could have known that DFA's actual or attempted monopsonization of the Northeast raw Grade A milk market was continuing, undeterred by (and in some cases in violation of) the terms of the *Allen* settlement, the Consent Decree, and DFA's own antitrust policy.

243. Since learning on September 27, 2019, through this Court's summary judgment order that DFA's anticompetitive activities were ongoing, Plaintiff undertook a thorough investigation, which ultimately led to the filing of this Complaint.

244. Between the *Allen* parties' submission of their settlement agreement with DFA for approval on May 9, 2016, and September 27, 2019, Plaintiff did not have actual knowledge that DFA's actions in the Northeast were taken with the intent to establish or maintain a monopsony in the raw Grade A milk market. And it is unreasonable to impute such knowledge to Plaintiff because each of DFA's anticompetitive actions was taken against the backdrop of DFA's public commitments to refrain from anticompetitive conduct in the Northeast Dairy Market and was accompanied by statements from DFA which falsely claimed that such actions were in furtherance of the interests of DFA's members. Moreover, given that DFA acts as an agent for its member farmers, the "relationship

between dairy cooperatives and their members is fiduciary in nature" and gives "rise to an affirmative duty to disclose the true facts and to correct any material factual misstatements."

245. By virtue of DFA's fraudulent concealment of its wrongful conduct, the running of any statute of limitations was tolled and suspended from May 9, 2016, to September 27, 2019, with respect to any claims and rights of action that Plaintiff and other Class members had as a result of the unlawful monopsony alleged in this Complaint and DFA's predicate acts in furtherance of the same prior to September 27, 2019.

## X. CONTINUING VIOLATION

246. The start of DFA's actual or attempted monopsonization of the Northeast market for raw Grade A milk predates the Class Period.

247. However, DFA was undeterred by the settlements in *Allen* and *Sitts* and has taken further anticompetitive, exclusionary, and predatory actions aimed at establishing or maintaining its monopsony buyer power in the Northeast.

248. As described above, several of DFA's anticompetitive, exclusionary, and predatory actions and overt acts occurred within the four-year statutory period. Moreover, Plaintiff sold its raw Grade A milk at prices that were artificially suppressed during the four-year statutory period preceding this Complaint as a result of DFA's anticompetitive, exclusionary, and predatory actions. DFA's setting of those prices constituted a new overt act causing injury to the proposed class.

(Doc. 1 at 71-74, ¶¶ 239-48.)

DFA asserts that SRJF has not plausibly pled either fraudulent concealment or a continuing violation. As a result, it argues that the claims alleged from May 9, 2016 to July 29, 2018 are barred by the Sherman Act's statute of limitations. *See* 15 U.S.C. § 15b ("Any action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued."). Although the court need not and does not adjudicate this claim, which is raised only in the alternative, it addresses it to negate SRJF's reliance on a discovery rule and to address whether SRJF has provided a basis for Rule 56(d) discovery.

"An antitrust cause of action accrues as soon as there is injury to competition." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996). "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a

19

plaintiff's business." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971); *see also Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 n.10 (D.C. Cir. 1991) (explaining antitrust exception to the general rule that "the discovery rule is to be applied in all federal question cases" because "the Supreme Court has held, as a matter of statutory interpretation, that a cause of action accrues at the time of injury" in antitrust matters). "[C]lear U.S. Supreme Court authority and the overwhelming majority of Circuits[,]" including the Second Circuit, "have explicitly held that antirust claims are subject to a pure injury rule, not a discovery rule." *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1210 (N.D. Cal. 2015).

> A statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's "discovery of the nature of the claim within the limitations period"; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled.

*Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999) (quoting *Lanza v. Merrill Lynch & Co.*, 154 F.3d 56, 60 (2d Cir. 1998)).

"[T]he burden of proving fraudulent concealment 'rests squarely on the party pleading [it].'" *United States v. Incorporated Vill. of Island Park*, 791 F. Supp. 354, 370 (E.D.N.Y. 1992) (quoting *Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp. 1423, 1443 (S.D.N.Y. 1986)) (second alteration in original). Because the three "elements of fraudulent concealment are *conjunctive*[,] . . . the absence of any one of the three will defeat the operation of that tolling doctrine." *Incorporated Vill. of Island Park*, 791 F. Supp. at 370 (emphasis in original). The doctrine of fraudulent concealment is applied only in "rare and exceptional circumstances[.]" *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014) (internal quotation marks omitted); *see also Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 361 (E.D.N.Y. 2022) (same).

"[L]ike a claim for fraud, a claim of fraudulent concealment must be [pleaded] with particularity, in accordance with the heightened pleading standards of Fed. R. Civ. P. 9(b)." *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 898 (E.D.N.Y. 2018) (internal

20

quotation marks omitted) (quoting *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 621 (S.D.N.Y. 2013)) (alterations in original). "When the plaintiff cannot specify the time and place of the fraud because the fraud is based on concealment, and no affirmative act occurred, the plaintiff must still allege: '(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud.'" *Agoliati v. Block 865 Lot 300 LLC*, 2021 WL 3193239, at \*5 (E.D.N.Y. Apr. 20, 2021) (quoting *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011)).

SRJF may plead fraudulent concealment "in one of two ways: (a) [DFA] took affirmative steps to prevent . . . [SRJF] from discovering the claim or injury, or (b) the wrong itself was of such a nature as to be self-concealing." *113 Main St. Assocs. v. Manko*, 179 F. Supp. 2d 339, 347 (S.D.N.Y. 2002). SRJF argues it need not satisfy this exacting standard because it was in a fiduciary relationship with DFA. "In New York, when the parties are engaged in a fiduciary relationship, the complaining party can claim the benefit of the fraudulent concealment doctrine even absent an affirmative misrepresentation by the party under the fiduciary duty." *Zola v. Gordon*, 685 F. Supp. 354, 364 (S.D.N.Y. 1988). In such a relationship, "fraudulent concealment occurs if the party under the fiduciary duty fails to meet its 'obligation to inform [the other party] of facts underlying the claim.'" *Id.* (quoting *Jordan v. Ford Motor Co.*, 426 N.Y.S.2d 359, 360-61 (N.Y. App. Div. 1980)) (alteration in original). Even then, however, "the statute of limitations is not tolled by fraudulent concealment once the plaintiff knows of the operative facts that form the basis of his claim such that he could discover his cause of action through the exercise of diligence." *Incorporated Vill. of Island Park*, 791 F. Supp. at 370; *see also Zola*, 685 F. Supp. at 367 ("All that is necessary to cause the tolling period to cease is for there to be reason to suspect the probability of any manner of wrongdoing."); *Manko*, 179 F. Supp. 2d at 348 ("Notice of a potential claim is all that is necessary."). This court has not yet determined that a fiduciary relationship exists

between the parties in the facts and circumstances of this case.[6] The existence of a fiduciary relationship, if established, does not eliminate the need to plausibly allege due diligence. *See Butala v. Agashiwala*, 916 F. Supp. 314, 320 (S.D.N.Y. 1996) ("Whatever duties the defendants owed to the plaintiffs, . . . their alleged failure to disclose facts would not excuse the plaintiffs' lack of diligence in investigating the facts of which they were unquestionably aware.") (citations omitted).

DFA argues: "It is not credible that [SRJF] was part of the *Allen* class and aware of the *Allen* settlement and its resolution of monopsonization claims as of May 9, 2016, but was completely ignorant of its potential monopsonization claims as of May 10, 2016." (Doc. 65 at 11.) It asserts that SRJF cannot establish fraudulent concealment because SRJF's allegations pertain to events between 2016 and 2018 that "were in the public domain and could not possibly have been concealed by DFA." (Doc. 45 at 26.) It further contends that SRJF cannot establish its ignorance because of "the *Allen* litigation, reports and information that DFA and others disclosed, extensive news reporting of DFA's business activities, and parallel litigation since 2016[.]" *Id.* at 20. It points out the improbability of SRJF's claim that it had no "inquiry notice" of a potential claim even though it was well aware that the *Allen* Settlement Agreement did not alter DFA's business model or practices. *Id.* at 20-21.

SRJF responds that it relied on the *Allen* Settlement Agreement and its structural reforms "as evidence that DFA would discontinue their anticompetitive, exclusionary, and predatory conduct in the Northeast raw Grade A milk market." (Doc. 1 at 72, ¶ 241.) According to SRJF, "[i]t was not until this [c]ourt ruled on DFA's motion for summary judgment in the *Sitts* action, and the [c]ourt disclosed certain . . . evidence gathered by the *Sitts* plaintiffs, that [SRJF] . . . could have known that DFA's actual or attempted monopsonization of the Northeast raw Grade A milk market was continuing[.]" *Id.* at ¶ 242. Subsequent to the court's September 27, 2019 summary judgment order in *Sitts*,

---

[6] *See Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 2610613, at *21 (D. Vt. June 11, 2014) (observing without deciding that plaintiffs "argue the relationship between dairy cooperatives and their members is fiduciary in nature and gave rise to an affirmative duty to disclose the true facts and to correct any material factual misstatements").

SRJF undertook a "thorough investigation, which ultimately led to the filing of this Complaint [on July 29, 2022]." *Id.* at 73, ¶ 243. SRJF does not allege the nature of its "thorough investigation" or any concealed evidence that it discovered as a result.[7]

DFA characterizes as implausible SRJF's claim that it was not the *Sitts* Complaint, but the court's summary judgment decision, that alerted SRJF to its potential claims. *See Wolf v. Wagner Spray Tech Corp.*, 715 F. Supp. 504, 509 (S.D.N.Y. 1989) (observing a determination of liability is not required and "facts that should arouse suspicion are equated with actual knowledge of the claim") (internal quotation marks and ellipses omitted); *Incorporated Vill. of Island Park*, 791 F. Supp. at 371 (noting that inquiry notice does not require "proof of the wrongdoing") (emphasis omitted). It notes that the numerous public filings, media reports, and the *Sitts* litigation itself placed SRJF on at least inquiry notice. *See Zirvi v. Flatley*, 838 F. App'x 582, 568 (2d Cir. 2020) (ruling that fraudulent concealment does not lie where prior "proceeding and the litigation -- both public proceedings -- involved substantially the same claims, and several of the same parties, as here" and therefore "put a person of ordinary intelligence on at least inquiry notice") (internal quotation marks omitted). Finally, it points out that SRJF does not require discovery *from DFA* to establish what was in the public record or to establish its own due diligence.[8] *See Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1388 (10th

---

[7] SRJF nonetheless admits in its brief that the only inquiry it ever made of the ombudsman was "how to get paid [its] share of the *Allen* settlement." (Doc. 60 at 31.) Although SRJF claims its investigation began in 2019, it sets forth no facts explaining why it waited until July 29, 2022 to file its Complaint.

[8] SRJF could not explain at oral argument why DFA would possess evidence of either SRJF's ignorance of the true facts or its efforts to discover them. Its Rule 56(d) Affidavit, however, seeks this evidence. *See, e.g.*, Doc. 58-4 at 3-4, ¶ 4b (Rule 56(d) Affidavit requesting post-May 10, 2016 communications between DFA and Mr. Poole and Ms. Nelson concerning the events described in SRJF's complaint because, in part, "these documents will also show that [SRJF's] ignorance of [its] claims did not arise out of a lack of diligence"); *id.* at 6, ¶ 4k (requesting documents and communications concerning DFA's efforts throughout 2017 to change the pooling rules in FMMO 1 because, in part, "the documents will also confirm that [SRJF's] ignorance of [its] claims did not arise out of a lack of diligence"); *id.* at 7, ¶ 8 (requesting depositions of Mr. Keating, Mr. Poole, Ms. Nelson, and DFA officers and employees because they will "generate evidence . . . as to [SRJF's] due diligence"); Doc. 58 at 29 ("This [Rule 56(d)] evidence will aid [SRJF] in demonstrating . . . that [it] was sufficiently diligent."); *id.* at

Cir. 1985) ("When the claim is one of concealment and the very facts allegedly concealed are available in public records, the argument that the plaintiffs should, as a matter of law, be held to constructive knowledge of their cause of action is much stronger.").

It is SRJF's duty to plausibly allege due diligence. It is not DFA's duty to disprove it. Having determined that SRJF has not plausibly pled fraudulent concealment with particularity, the court turns to SRJF's request for discovery.

### E.     Whether the Court Should Order Rule 56(d) Discovery.

Fed. R. Civ. P. 56(d) provides that when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer consideration of the motion, deny the motion, allow time to obtain affidavits or declarations or take discovery, or issue any other appropriate order. Rule 56(d) is "an important safeguard against improvident or premature motions for summary judgment[.]" *Delphi-Delco Elecs. Sys. v. M/V NEDLLOYD EUROPA*, 324 F. Supp. 2d 403, 417 (S.D.N.Y. 2004). Courts generally "apply it with a spirit of liberality." *Id.* at 418. The rule is not, however, "a shield against all summary judgment motions." *Id.* (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)). Instead, "[l]itigants seeking relief under the rule must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative." *Id.* (quoting *Paddington Partners*, 34 F.3d at 1138). As DFA points out, SRJF does not "even allege any hypothetical pieces of information that DFA might have hidden." (Doc. 65 at 9).

"A court may reject a request for discovery . . . if the request is based on . . . the mere hope that additional evidence may develop prior to trial" and "the rule should not be applied liberally to aid parties 'who have been lazy or dilatory.'" *Delphi-Delco*, 324 F. Supp. 2d at 418. A party seeking discovery in response to a motion for summary judgment bears the burden to state in an affidavit "1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and 2) how those facts are reasonably expected to create a genuine issue of material fact; and 3) what

n.22 ("Indeed, DFA has made no effort to prove [SRJF] was not sufficiently diligent. There is no evidence in the record regarding [its] actions in this regard.").

efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985).

Rule 56(d) "is not a license to go fishing for evidence[] in the hopes of finding something that will support one's claims. . . . There must be some showing that the movant knows what facts he is after, and some reasonable expectation not only that those facts can be found, but that they will create a genuine issue of material fact." *Robinson v. Allstate*, 706 F. Supp. 2d 320, 329-30 (W.D.N.Y. 2010).

"While the question of whether a plaintiff exercised reasonable diligence is frequently a question of fact to be decided by a jury, the issue may be decided on summary judgment if the facts in the record are clear and sufficient." *Manko*, 179 F. Supp. 2d at 349.[9] "The test as to when fraud should with reasonable diligence have been discovered is an objective one." *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983). A plaintiff can prove diligence "either by showing that: [] the circumstances were such that a reasonable person would not have thought to investigate, or [] the plaintiff's attempted investigation was thwarted." *Iowa Pub. Emps.' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 340 F. Supp. 3d 285, 337 (S.D.N.Y. 2018) (quoting *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 676 (S.D.N.Y. 2016) (internal quotation marks omitted)). In the present version of its Complaint, SRJF plausibly alleges neither.

As one court has observed: "the plaintiffs assert that whether they exerted due diligence is a question of fact that requires a jury determination. But the plaintiffs bear the burden of pleading their own diligence with particularity, and this Complaint is utterly lacking in the details of what steps the plaintiffs took to investigate . . . once they

---

[9] *See also In re Buspirone Pat. Litig.*, 185 F. Supp. 2d 363, 380 (S.D.N.Y. 2002) ("These facts were sufficient to allow any reasonable person in the exercise of due diligence to have surmised that Bristol-Myers and Schein had reached a settlement agreement requiring Schein to stay out of the market."); *Kronfeld v. Advest, Inc.*, 675 F. Supp. 1449, 1458 (S.D.N.Y. 1987) ("Although reasonable diligence . . . is ordinarily a question of fact for the jury, . . . 'the cases are legion in which summary judgment has been granted on the ground that the plaintiff should have discovered his cause of action under the securities law before the statute of limitations had run.'") (quoting *Campbell v. Upjohn Co.*, 498 F. Supp. 722, 730 (W.D. Mich. 1980)).

were on inquiry notice of the probability they had been defrauded." *Butala*, 916 F. Supp. at 320. A similar observation is warranted here.[10]

For the reasons stated above, the court DENIES SRJF's Rule 56(d) motion for additional discovery. Discovery is not required to address DFA's alternative basis for dismissal on statute of limitations grounds and SRJF has not plausibly alleged a fraudulent concealment claim.

## CONCLUSION

For the foregoing reasons, the court DENIES SRJF's motion to strike the Keating Affidavit (Doc. 57), GRANTS DFA's motion for partial summary judgment on its claim that SRJF violated the *Allen* Settlement Agreement's release and covenant not to sue (Doc. 45), DENIES SRJF's cross-motion for summary judgment on these same issues (Doc. 58), DENIES SRJF's Rule 56(d) request for discovery (Doc. 60-4), and GRANTS SRJF leave to file an Amended Complaint within twenty (20) days of the date of this Opinion and Order. The Amended Complaint shall include the red-lined version required by the court's Local Rules.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 26th day of September, 2023.

Christina Reiss, District Judge
United States District Court

---

[10] SRJF's continuing violation claim raises different concerns. It may run afoul of the *Allen* Settlement Agreement and its covenant not to sue. The court leaves this determination to SRJF in deciding whether to retain this claim in its Amended Complaint.